STATE DIVISION OF HUMAN RIGHTS on Complaint of SALLY
RAPPAPORT, Respondent, v GENESEE HOSPITAL, Petitioner.

Fourth Department, July 6, 1979

## APPEARANCES OF COUNSEL

*Harris, Beach, Wilcox, Rubin & Levey (Susan Robfogel* of counsel), for petitioner.

*Ann T. Anderson* for respondent.

*O'Connell & Aronowitz, P. C. (Robert Ganz* of counsel), and *Joseph B. Robison* for Sally Rappaport.

## OPINION OF THE COURT

SCHNEPP, J.

Based upon the complaint of Sally Rappaport, the Commissioner of the State Division of Human Rights determined that her employer, the Genesee Hospital, discriminated against her by requiring her to work on her Sabbath while employed at the hospital's nuclear medicine division. The hospital seeks to annul an order of the Human Rights Appeal Board which affirmed the commissioner's determination (Executive Law, § 298).

The commissioner adopted the findings of the hearing examiner who concluded (1) that Ms. Rappaport's personal presence on the Sabbath was not required for emergencies nor indispensable to the orderly transaction of the hospital's business, (2) that the hospital made no attempt to accommodate Ms. Rappaport to permit her to work as a nuclear medicine technician and observe her religious practice, and (3) that the hospital did not sustain its burden of proof required by section 296 (subd 10, par [c]) of the Executive Law to show that "the uniform application of terms and conditions of attendance to employees is essential to prevent undue economic hardship". The commissioner in addition found the following facts which are significant to our decision. In September, 1975 Ms. Rappaport, a member of the Jewish faith and a Sabbath observer, was hired as a technician-trainee in the nuclear medicine division of the radiology department at Genesee Hospital in Rochester, New York. The division was comprised of four employees and a supervisor. At the time of her employment

Ms. Rappaport was aware that her regular schedule would be a five-day work week with some Saturday work which she understood was to be on an occasional basis involving emergency procedures. She believed that this work schedule was permissible under the tenets of her religion. During November, 1975 she expressed concern to her supervisor that Saturday work was interfering with her religious observance. In January, 1976 the staff of the nuclear medicine division was informed that in order to increase revenues, more out-patient and other nonemergency procedures would be performed on Saturdays. Ms. Rappaport was then required to work on a rotating basis with the other three technicians every other Saturday. In view of the fact that Saturday work was to be a regular part of her work schedule and was not exclusively reserved for medical emergencies, Ms. Rappaport requested the hospital to make an accommodation in her work schedule to allow her to observe her Sabbath in accordance with her religious beliefs and asked to be excused from all further Saturday assignments. The hospital did not adopt a work schedule which would accommodate her Sabbath observance and permit her to work as a nuclear medicine technician. It continued to require her to work every other Saturday on a regular basis until she resigned on October 1, 1976.

■ Section 296 (subd 10, par [b]) of the Executive Law provides that "[e]xcept as may be required in an emergency or where his personal presence is indispensable to the orderly transaction of business, no person shall be required to remain at his place of employment during any day * * * that, as a requirement of his religion, he observes as his sabbath". The statutory prohibition does not apply, however, "where the uniform application of terms and conditions of attendance to employees is essential to prevent undue economic hardship to the employer." The burden of proof in showing a statutory exception rests on the employer (Executive Law, § 296, subd 10, par [c]).

■ We may not disturb the order of the appeal board if there is sufficient evidence in the record to support the findings of fact on which its order is based. Judicial review is limited to a consideration of whether the determination was supported by substantial evidence which must rise above "bare surmise, conjecture, speculation or rumor * * * [but] it is less than a preponderance * * * [or] overwhelming evidence" (300 Gramatan Ave. Assoc. v State Div. of Human

*Rights,* 45 NY2d 176, 180). The question is whether the quality and quantity of proof generates conviction in and persuades a fair and detached fact finder that the conclusion "may be extracted reasonably—probatively and logically" *(300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra,* p 181).

Substantial evidence supports the findings of nonemergency and lack of indispensability, so that we proceed directly to an application of the *Gramatan (supra)* principles to the "undue economic hardship" finding, the threshold issue and the only basis upon which a statutory exception is permitted.

▪ The Court of Appeals has recently defined "undue economic hardship". In passing on a complaint of discrimination arising from an employer's alleged failure to accommodate the religious beliefs of an employee it stated: "If, as the employer contends, designating a qualified substitute for complainant's Saturday shift would entail any significant increase in costs, that would be enough to establish undue hardship. It should be obvious that an undue economic hardship does not require any threat or undermining of the economic stability of an enterprise. It would be enough that a palpable increase in costs or risk to industrial peace would be required in order to accomplish the end sought by the employee" *(State Div. of Human Rights v Carnation Co.,* 42 NY2d 873, 875; see, also, *Matter of Schweizer Aricraft Corp. v State Div. of Human Rights,* 64 AD2d 804).

The nuclear medicine division at Genesee Hospital was limited in size, consisting of Ms. Rappaport, two other technicians, a supervising technician and a secretary. Ms. Rappaport worked some Saturdays during October, November and December of 1975 at overtime pay. In January, 1976 the hospital decided that the division should remain open without overtime pay on Saturdays to generate more revenue and to provide additional routine services to an increased number of out-patients and good patient care. This required the presence of two employees to do the necessary work. A technician performing Ms. Rappaport's job is indispensable two out of four Saturdays. If Ms. Rappaport were relieved of Saturday work, the remaining staff members would be required to work two out of three instead of two out of four Saturdays. After she requested the hospital to accommodate her schedule she unsuccessfully attempted, at the hospital's instance, to arrange with her fellow technicians to substitute for her on

Saturdays. Ms. Rappaport characterized her coworkers as "no longer friendly" and "upset" when they were informed that she did not want to work on Saturdays. Although none of these employees was specifically asked by the hospital to switch her Saturday time, two expressed to authorities an unwillingness to work additional Saturdays to accommodate someone else.

The hospital presented proof that implementation of Ms. Rappaport's suggestion to open the nuclear medicine division every other Sunday on the weekends when her presence was required would be unworkable. This schedule would confuse and disorient the hospital staff, be inconvenient to its patients and not solve Saturday scheduling. Sunday work was also unacceptable to the hospital because of (1) hospital under-staffing, (2) the isolation of the division from the rest of the hospital which created potential problems if nursing or medical aid was needed in an emergency, (3) the need for an additional technician to work with Ms. Rappaport, and (4) the difficulty of obtaining the services of a radiologist. The supervisor's presence on Saturday or Sunday would not help the scheduling problem because she was required to perform quality control work and a second technician was needed to assist in many of the division's procedures. The services of the only person in the hospital with nuclear medicine skills outside of the division who could act as a substitute for Ms. Rappaport on Saturdays were rejected for "professional reasons". This person had not worked in the field for at least three years and was unfamiliar with the current methods of operation in the division. It appears that it would require six months to train this person on a part-time basis to an adequate level of competency. The hospital also considered and dismissed as too costly and difficult the recruitment of a substitute technician for Ms. Rappaport's Saturday work. Furthermore, to schedule Ms. Rappaport to work extra hours during the week instead of Saturdays would not alleviate the Saturday staffing requirements. As the "Pagemaster" has value only when an employee's attendance is needed occasionally, its use as an alternative was unacceptable. In view of these reasons the hospital obviously could not employ Ms. Rappaport on Sundays or nights to make up for her Saturdays. It is clear from the proof that if the hospital did not require her to work Saturdays, the only alternative available to it was to close the division on the Saturdays she was

scheduled to work. It is also apparent that the hospital considered all feasible alternatives to accommodate Ms. Rappaport's Sabbath observance and permit her to retain her job as a nuclear medicine technician. Its rejection of the above-described alternatives cannot be considered unreasonable.

Moreover, the hospital presented evidence that it would sustain a loss of $70 to $85 per month if it paid Ms. Rappaport's fellow technicians overtime to work Saturdays or arranged for the division's supervisor to work overtime during the week to release Ms. Rappaport of her Saturday duties. It also proffered opinion evidence that "industrial peace" might be upset if the three other technicians in the nuclear medicine division were compelled to work extra Saturdays. The director of employee affairs for the hospital opined that if weekend work were not divided equally among the employees in the department, the employees would become "frustrated" and that this frustration could manifest itself in "absenteeism * * * poor morale * * * listlessness, or * * * aggressive tendenc[ies]" and he advised the hospital against this course of action.

As stated above, undue economic hardship results from a "palpable increase in costs or [a] risk to industrial peace" *(State Div. of Human Rights v Carnation Co.,* 42 NY2d 873, 875, *supra).* The record reflects that both situations confronted the hospital. Accommodation of Ms. Rappaport's desire not to work Saturdays would put an undue burden on personnel relations and create economic hardship. The hospital "met its burden of proving that an accommodation such as that sought by complainant herein would have resulted in a 'risk to industrial peace' [citation omitted] so as to be an 'undue economic hardship' " *(Schweizer Aircraft Corp. v State Div. of Human Rights,* 64 AD2d 804, 805, *supra).* It also established that an increase in its costs would result unless it uniformly applied the terms and conditions of attendance to its employees (Executive Law, § 296, subd 10, par [c]). While our Court of Appeals has defined an undue economic hardship as a "palpable increase in costs" *(State Div. of Human Rights v Carnation Co., supra,* p 875), the United States Supreme Court has defined "undue hardship" as a *"de minimis* cost" *(Trans World Airlines v Hardison,* 432 US 63, 84). Dealing with the related context of the Federal Civil Rights Act of 1964 (US Code, tit 42, § 2000e *et seq.)* which requires an employer to make "reasonable accommodations" to the religious needs of

an employee, the court in *Hardison* stated: "To require [an employer] to bear more than a *de mimimis* cost in order to give [an employee] Saturdays off is an undue hardship" *(Trans World Airlines v Hardison, 432 US 63, 84, supra).* Whichever standard we employ, the record evidences that the hospital would incur an "undue economic hardship" if it accommodated Ms. Rappaport's Sabbath observance.

One option, however, which was considered by the hospital and would have caused no economic hardship, was to provide Ms. Rappaport with comparable employment in a division other than nuclear medicine. There was evidence that Ms. Rappaport's Sabbath observance could be accommodated as a diagnostic technician in the diagnostic radiology department, which is open seven days a week and would accord her the same benefits and salary. Further, Ronald Prêss, senior assistant director of the hospital, testified that during the time Ms. Rappaport was working in the nuclear medicine division at least nine comparable job opportunities at the same pay and status for which she was qualified were available and were posted on the hospital bulletin board. Yet, the hospital offered no employment to her elsewhere. Press stated that it was not Ms. Rappaport's desire to work in another division. Ms. Rappaport made a career choice to specialize in nuclear medicine and had previously requested a position in this division even as a student in radiology. To fulfill her certification requirements for licensing as a nuclear medicine technologist, she had to complete one year's work as a technician-trainee. Based on her employment history the hospital authorities concluded that she would not accept a position in any other division that would not qualify her as a nuclear medicine technologist. However, no position of this character was available in any other division. Ms. Rappaport offered no proof from which an inference could be made that she would have accepted any position outside of the nuclear medicine division. In fact, she actually remained in the division to complete the necessary one-year requirement for certification. Her legal position at the hearing was that her schedule must be accommodated to permit her to work as a nuclear medicine technician. Throughout the findings, reference is made to a purported legal requirement that her Saturday observance be accommodated to permit her to work in the nuclear medicine division. Indeed, she contends before this court that she possesses the right to a position in the division. She claims the

rights to have her employer make an attempt to accommodate her religious observance while she works in her chosen field of nuclear medicine, and unequivocally states that the attempt was not made. Had she indicated a willingness to work elsewhere than the nuclear medicine division a different factual issue would be present. The alternative of offering her another job would not have caused undue economic hardship and failure to have made the offer would have been at the hospital's peril. The offer by the hospital of a position in another division would have been a futile gesture in the face of these facts.

The theory of the administrative decision is that the hospital had to accommodate Ms. Rappaport's religious preference in the nuclear medicine division. We cannot interpret the statute absolutely to require an employer to schedule an employee to work on days and times in accord with his religious preferences and to provide the employee with a particular job. To require that the religious preference be accommodated without regard to the effect on the employer or coemployees is to exalt the religious preference of the Sabbath observer over the economic interest of the employer and the religious or work preference of coemployees. "[W]e will not readily construe the statute to require an employer to discriminate against some employees in order to enable others to observe their Sabbath" *(Trans World Airlines v Hardison,* 432 US 63, 85, *supra).*

■ ■ The commissioner's findings that the hospital "could have scheduled complainant to work on days and times so as to permit her to work as a nuclear medical technician and observe her Sabbath", that it "made no attempt to accommodate complainant to permit her to work as a Nuclear Medicine Technician and observe her religious practice", and that it "did not sustain the burden of proof required by Section 296.10 (c) to show that 'the uniform application of terms and conditions of attendance to employees is essential to prevent undue economic hardship to the employer' " are not supported by substantial evidence. Where the uniform application of the terms of attendance is essential to prevent undue economic hardship the provisions of subdivision 10 of section 296 of the Executive Law do not apply.

Accordingly, we annul and set aside in whole the order and determination of the State Human Rights Appeal Board and grant the petition of Genesee Hospital.

SIMONS, J. P. (dissenting). There are two issues in this case. The first is whether there is an affirmative duty on an employer to attempt to accommodate the known religious beliefs of its employees or whether it may defeat a discrimination complaint brought pursuant to section 296 (subd 10, par [b]) of the Executive Law merely by showing justification for its actions at the time of the hearing. The second issue is whether petitioner has proven "undue economic hardship" excepting it from the statute's requirement in this case. In my view, an employer has an affirmative duty to make reasonable attempts to accommodate its employees or prove that such efforts would be unavailing and there is substantial evidence in the record to support the commissioner's determination that this petitioner failed to do so. Furthermore, there was not substantial evidence before the commissioner by which petitioner met its burden or proving that it was exempt from the provisions of section 296 (subd 10, par [c]) of the Executive Law because of undue economic hardship. I would therefore confirm the finding of discrimination but modify the order by directing in paragraph 1 that petitioner must offer complainant a job with comparable pay and working conditions which does not interfere with her Sabbath. She is not entitled to demand restoration of her original job in the nuclear medicine division.

The commissioner's findings that the complainant was a Sabbath observer, that she observed the tenets of her religion in that respect, and that petitioner was aware of this fact before requiring regular Saturday work by the employees of the nuclear medicine division is amply supported by the record. Nevertheless, petitioner changed the job schedules and required complainant to work regularly on her Sabbath.

Section 296 (subd 10, par [b]) provides that, except under circumstances not applicable here, "no person shall be required to remain at his place of employment during any day * * * that, as a requirement of his religion, he observes as his sabbath." This court and the Court of Appeals have held that an employer must accommodate the Sabbath requirements of an employee's religion if it can do so without undue economic hardship *(State Div. of Human Rights v Carnation Co.,* 42 NY2d 873, 874, revg 53 AD2d 1053, 1054; Executive Law, § 296, subd [10], par [c]; see, also, *Trans World Airlines v Hardison,* 432 US 63, 74; *Claybaugh v Pacific Northwest Bell Tel. Co.,* 355 F Supp 1, 5).

When complainant requested consideration because she was a Sabbath observer, the hospital's administrator told her something could be worked out but after learning that she had previously worked Saturdays in emergencies, he told her, and wrongly so, that she had "compromised" her position. Complainant was left to solve the problem herself by attempting a voluntary schedule adjustment with her coemployees. Her superiors testified that "it was left to her to make the arrangements", the change in schedules was "perfectly alright as long as she could arrange it with the other technologists and [as long as] everyone was happy about the situation." She was not offered any alternative employment and none of petitioner's supervisory staff ever spoke to the other employees of the nuclear medicine division concerning complainant's request or tried to adjust the employees' working schedules until after her complaint was filed in this proceeding. Indeed, such conversations as the supervisors and employees had at that time were initiated by the employees, not the employer. Petitioner now points out that complainant could have had other comparable jobs which did not require Saturday work and that at least nine such jobs were posted on the bulletin board. They made no such suggestions to her at the time, however.

By this attitude of indifference, petitioner placed the responsibility for avoiding discrimination upon the complainant, rather than accepting the duty imposed upon it by law. Manifestly, section 296 was designed to overcome just such inertia on the part of employers and coemployees when confronted with a request for reasonable consideration by a member of a minority religious group whose Sabbath observance conflicts with the employee's hours of employment. The statute requires the employer to make reasonable efforts to accommodate such requests. It is not for us to speculate on what success inquiries or conferences between employer, complainant and other employees may have. Undoubtedly an employer's inquiry provokes more serious consideration from coworkers than similar inquiries by a complainant. More importantly, however, the assumption of this responsibility by the employer places it on the side of the issue on which the statute says it belongs, against discrimination and attempting to eliminate it. One thing is near certain, the "democratic" solution attempted here by polling the employees fails more often than it succeeds, for if experience proved otherwise,

there would be no need for the statute. Complainant should not have been forced to rely upon the good will of her coworkers or her powers of persuasion, else be relegated to choosing between her religious beliefs and her employment.

Of course, employers can always articulate obstacles to accommodation after the fact. Adjustments to meet a complainant's needs necessarily have an impact upon the operation of the business and implementation of the antidiscrimination statutes inevitably creates tension between the employer, minority group employees and their coworkers. But the Legislature has determined that New York employers must reasonably attempt to reconcile these conflicting interests. The determination of whether the employer has done so is entirely factual and the commissioner was free to reject the evidence of petitioner in view of its prior attitude toward claimant's request.

Next, petitioner contends, and the majority find, that even though the commissioner found that it failed to try and accommodate complainant, it has met its burden of establishing that it would cause it "undue economic hardship" to do so. The limited case law on the subject describes "undue economic hardship" as "a significant" or "a palpable increase in costs" (State Div. of Human Rights v Carnation Co., 42 NY2d 873, 875, supra). Petitioner contends, and the commissioner found, that the cost of accommodating complainant was $70 per month if another technician was paid overtime to work complainant's Saturday assignments, or $85.90 per month if the supervisor's schedule was adjusted to accommodate the shift. Accepting those figures, there is no rationale by which it may be found that the amounts represent a "significant increase" in costs in the operation of the Genesee Hospital or its nuclear medicine division. The statutory standard is not quantitative but relative and the test therefore becomes an evidentiary one to be determined in the first instance by the administrative agency. There was no evidence before the commissioner upon which he could determine whether these sums represent significant amounts to the Genesee Hospital or its nuclear medicine division and there is no basis in the evidence upon which the court may now determine that the cost to petitioner in adjusting work schedules confronted it with a "significant" or "palpable" increase in costs, or that the commissioner erred in finding a failure of proof on the issue.

The majority, relying upon the Supreme Court's decision in

*Trans World Airlines v Hardison* (432 US 63, *supra)* annul the commissioner's finding holding that proof of *de minimis* economic hardship is sufficient to satisfy the statutory requirement. That case is factually distinguishable because the result was predetermined for all practical purposes by the seniority provisions of a union contract (see, also, *Matter of Schweizer Aircraft Corp. v State Div. of Human Rights,* 64 AD2d 804, 805). But more importantly, the Supreme Court was applying title VII of the Federal Civil Rights Law (US Code, tit 42, § 2000e-2, subd [a], par [1]) and the *"de minimis"* rule is not controlling in this case in view of the different language of New York's statute and the Court of Appeals interpretation of it (see *State Div. of Human Rights v Carnation Co., supra).* What is significant about the *Trans World Airlines* case, however, and pertinent to this case, is the court's finding *(supra,* pp 77-78) that TWA accepted the burden of making reasonable efforts to accommodate complainant by trying to adjust work schedules and offering complainant another job, things this petitioner failed to do.

The majority's determination that the hospital "considered all feasible alternatives" and "that the only alternative, if it was to accommodate complainant, was to close the division on the Saturdays she was scheduled to work" is not supported by the evidence in the record. The findings of the commissioner rest upon substantial evidence and should be confirmed. The order should be modified, however, by striking the provision in paragraph 1 requiring re-employment in the nuclear medicine division and directing that petitioner offer a job at comparable pay and terms of employment, and, as so modified, the determination should be confirmed.

HANCOCK, JR., DOERR and WITMER, JJ., concur with SCHNEPP, J.; SIMONS, J. P., dissents and votes to modify and confirm the determination in an opinion.

Petition granted, without costs, determination and order reversed, and complaint dismissed.